UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOSEPH DADON, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-03862-JMS-DLP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Defendant*. | ) | |

## **ORDER**

On August 20, 2019, the Internal Revenue Service ("IRS") issued a summons to JPMorgan Chase Bank, N.A. ("Chase") related to information sought by the government of France regarding a tax investigation into the French Value Added Tax ("VAT") liabilities of Société Francaise De Négoce International ("SFNI") for 2015-2016.  The summons requests information regarding a Chase account controlled by Plaintiff Joseph Dadon, and Mr. Dadon subsequently filed a Petition to Quash Internal Revenue Service Third Party Summons, [Filing No. 1], and an Amended Petition to Quash IRS Third Party Summons, [Filing No. 6].  Defendant the United States of America has filed a Motion to Dismiss and, in the Alternative, Motion for Summary Judgment, [Filing No. 11], which is now ripe for the Court's decision.

## I.
### PROCEDURAL HISTORY

At the outset, the Court notes that it issued an Order on January 30, 2020 stating that it had determined that the United States' motion should be treated as a Motion for Summary Judgment because the United States had presented matters outside the pleadings.  [Filing No. 19 at 1.] Pursuant to Fed. R. Civ. P. 56(d), the Court gave Mr. Dadon until February 14, 2020 to present

1

any material he believed is relevant to the motion.  [Filing No. 19 at 1 (noting that Rule 56(d)

provides that when the Court converts a Motion to Dismiss into a Motion for Summary Judgment,

"[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to

the motion").]  Mr. Dadon did not submit any material in response to the Court's January 30, 2020

Order.  Accordingly, the Court considers the United States' motion under the standards applicable

to a Motion for Summary Judgment, and analyzes it based on the record that is now before the

Court.

## II.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law.  *See* Fed. R. Civ. P. 56(a).  As the current version of Rule 56 makes clear, whether

a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted

fact by citing to particular parts of the record, including depositions, documents, or affidavits.  Fed.

R. Civ. P. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not

establish the absence or presence of a genuine dispute or that the adverse party cannot produce

admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B).  Failure to properly support

a fact in opposition to a movant's factual assertion can result in the movant's fact being considered

undisputed, and potentially in the granting of summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts

that are material to the decision.  A disputed fact is material if it might affect the outcome of the

suit under the governing law.  *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009).  In

other words, while there may be facts that are in dispute, summary judgment is appropriate if those

facts are not outcome determinative.  *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir.

2005).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003).  The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).  The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them."  *Johnson*, 325 F.3d at 898.  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

### III.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standards detailed above.  The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made."  *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

On December 26, 2018, the IRS's Exchange of Information Office in the Large Business and International Division received a request for information ("EOI Request") from "the competent authority for France, acting through its Tax Attaché in Washington, D.C." [Filing No. 11-1 at 2.] The EOI Request was supplemented on May 3, 2019 and again on June 18, 2019. [Filing No. 11-1 at 2.] The EOI Request indicated that SFNI is under investigation by the French tax authorities related to its VAT liabilities for January 1, 2015 through December 31, 2016. [Filing No. 11-1 at 2.] The EOI Request provided that:

> SFNI purchased metals from a company called Ultrawave Trading Ltd. ["Ultrawave"], and that in 2015 alone, SFNI paid Ultrawave more than €8.9 million in connection with such transactions. France believes that SFNI improperly claimed deductions to its French VAT liabilities based on purported VAT payments made by [Ultrawave] that were never collected or remitted to French tax authorities. French authorities believe that amounts corresponding to the VAT that should have been remitted were instead transferred by Ultrawave to a U.S. bank account at [Chase] controlled by Mr. Dadon. France believes that Mr. Dadon owns or controls the bank account used by Ultrawave.

> The EOI Request seeks information regarding the bank account to which funds corresponding to the amount of unpaid VAT were traced, including bank account statements relating to the account during the 2015-2016 time period.

[Filing No. 11-1 at 2-3.][1]

The United States issued a summons for the information requested by the government of France on August 20, 2019, later withdrew that summons, and reissued a summons on October 8, 2019. [Filing No. 11-1 at 3.] On October 8, 2019, the reissued summons was served on Chase,

---

[1] The description of the EOI Request is taken from the Declaration of Tina B. Masuda (the "Masuda Declaration"). [Filing No. 11-1.] Ms. Masuda is the Program Manager of the IRS's Exchange of Information Office in the Large Business and International Division and is the "delegated…authority…to authorize the transmittal of, and request for, information in accordance with the exchange-of-information provisions of tax treaties…." [Filing No. 11-1 at 1.] The United States has not submitted the actual EOI Request.

and notice of the reissued summons was served on Mr. Dadon, his counsel, and SFNI.  [Filing No. 11-1 at 3; Filing No. 11-2; Filing No. 11-3.]

Mr. Dadon filed his initial Petition to Quash Internal Revenue Service Third Party Summons on September 11, 2019.  [Filing No. 1.]  The Court denied the Petition as moot based on Mr. Dadon's filing of his Amended Petition to Quash IRS Third Party Summons, which addresses the IRS's reissued summons.  [Filing No. 7.]  Mr. Dadon asserts in his Amended Petition that the summons is invalid because no law authorizes its issuance.  [Filing No. 6 at 4.]  Specifically, he contends that the summons is not authorized by the Internal Revenue Code (the "IRC"), 26 U.S.C. § 7602, by the U.S.-France Tax Treaty (the "Treaty"), or by a protocol signed on January 13, 2009 to amend the Treaty (the "2009 Protocol").  [Filing No. 6 at 4-8.]  He also avers that he has never had an ownership interest in or been employed by SFNI, that his bank account is not owned by SFNI, and that no funds have ever been sent from that account to SFNI or been deposited in that account by SFNI.  [Filing No. 2 at 1-2.]

The United States filed its Motion to Dismiss and, in the Alternative, Motion for Summary Judgment on December 13, 2019, [Filing No. 11], which the Court is treating as a Motion for Summary Judgment, [Filing No. 19].  The United States relies upon the Treaty, a Mutual Assistance Convention entered into between the United States and France (the "Convention"), and the IRC in justifying issuance of the summons.  [Filing No. 12 at 5-10.]

**IV.**
**DISCUSSION**

**A.  Relevant Law**

In order to show that the summons should be enforced, the United States must demonstrate that it acted in good faith in issuing the summons, which means:

> [The IRS Commissioner] must show that the investigation will be conducted
> pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose,
> that the information sought is not already within the Commissioner's possession,
> and that the administrative steps required by the Code have been followed – in
> particular, that the 'Secretary or his delegate,' after investigation, has determined
> the further examination to be necessary and has notified the taxpayer in writing to
> that effect.

*United States v. Powell*, 379 U.S. 48, 57-58 (1964); *see also United States v. Stuart*, 489 U.S. 353, 359 (1989).   Once the United States makes that showing, it is entitled to an enforcement order unless Mr. Dadon can show that the IRS "is attempting to abuse the court's process," which means that "the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation."   *Id.* at 360 (internal citation and quotation omitted).   Mr. Dadon has the burden of showing abuse of the court's process.   *Id.*   The proceedings relating to issuance of a summons are meant to be "summary in nature."   *Id.* at 369.

**B.  Analysis of the Parties' Arguments**

The United States argues that it has set forth a good faith basis for issuing the summons through the Masuda Declaration, which it argues shows that: (1) the summons was issued for a legitimate purpose, because providing assistance to the government of France was proper under the Treaty and the Convention; (2) the information sought is relevant to the investigation because "it involves transactions related to French taxation and may assist France in identifying the beneficiaries of the transfers and in determining the correct assessment of tax"; (3) the information sought by the summons is not already in the possession of the IRS or French tax authorities; and (4) the summons was properly served by certified mail and those identified in the summons – SFNI and Mr. Dadon – were provided notice in accordance with the IRC.   [Filing No. 12 at 4-5.] The Court will discuss each of these four requirements separately below.

6

### 1.   Issued For A Legitimate Purpose

The United States argues that the summons was issued for a legitimate purpose because it had the authority to issue the summons under the Treaty, the Convention, and the IRC.  [Filing No. 12 at 5-10.]

### a.   The Treaty

The United States argues that Article 27(4)(a) of the Treaty permitted the United States to issue the summons at the request of the French government, even without amendment by the 2009 Protocol.  [Filing No. 12 at 6-7.]  The United States asserts that the summons was issued at the request of the French government, as required by the Treaty, and not at the request of SFNI, as Mr. Dadon argues.  [Filing No. 12 at 8.]  It also contends that the restrictions in Article 28 of the Treaty, upon which Mr. Dadon relies, relate to the collection of taxes and do not apply here because the United States issued the summons under Article 27, which relates to information sharing.  [Filing No. 12 at 9.]

Mr. Dadon argues in response[2] that the Treaty only allows for assistance with requests by the government of France, that the request was made by someone other than the government of France, and that the Masuda Declaration does not contradict that.  [Filing No. 16 at 4.]  Mr. Dadon

---

[2] Mr. Dadon argues generally that the United States has submitted "improper and impermissible evidence" – *i.e.*, the Masuda Declaration – and that the Court must accept his allegations as true at the motion to dismiss stage.  [Filing No. 16 at 1-2.]  He also contends that converting the motion into a motion for summary judgment would be improper because he "cannot contradict or challenge" the Masuda Declaration without first conducting discovery.  [Filing No. 16 at 2.]  When the Court ordered that it would treat the United States' motion as a Motion for Summary Judgment and gave Mr. Dadon an opportunity to submit any material that he believed was relevant to the motion, [*see* Filing No. 19], Mr. Dadon did not seek additional time to conduct discovery.  Additionally, he did not submit any additional material.  Because the Court gave Mr. Dadon notice of its intention to treat the United States' motion as a Motion for Summary Judgment, and provided him with an opportunity to present additional evidence pursuant to Fed. R. Civ. 12(d), the Court may properly consider the Masuda Declaration.

notes that the Masuda Declaration states the request was made by "the competent authority for France," and not a "Contracting State" as required by the Treaty.  [Filing No. 16 at 4.]  He also argues that Section 7602 of the IRC provides the sole authority for the United States to issue summonses, that this authority "can be expanded only by a law approved by both the House and the Senate, then signed into law by the President," and that the Treaty was not passed in the House of Representatives, but was only approved by the Senate.  [Filing No. 16 at 3.]

In its reply, the Unites States argues that the term "competent authority" as used in the Masuda Declaration is defined in Article 3(1)(h) of the Treaty and means "the Minister in charge of the budget or his authorized representative."  [Filing No. 17 at 3.]  The United States contends that Mr. Dadon appears to believe that the summons requires any response be sent to SFNI, which may be the basis for his argument that SFNI is the requesting party, but that the summons actually requires that the response be sent to the IRS.  [Filing No. 17 at 4.]  The United States also argues that the United States Constitution authorizes the President to enter into treaties with foreign nations "with the Advice and Consent of the Senate…provided two thirds of the Senators present concur," and that the Treaty was properly signed by the President and ratified by the Senate.  [Filing No. 17 at 5-6 (internal quotation and citation omitted).]

Article VI, section 1, clause 2 of the Unites States Constitution provides that "Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States shall be the supreme Law of the Land."  Treaties need only be approved by two-thirds of the Senate, U.S. Const. Art. II, § 2, and statutes and treaties are on equal footing under the law, *Whitney v. Robertson*, 124 U.S. 190, 194 (1888).  The Court rejects Mr. Dadon's argument that the House was required to approve the Treaty, and that the Treaty is somehow invalid.

Article 27 of the Treaty, which is titled "Exchange of Information," provides that:

The competent authorities of the Contracting States shall exchange such information as is pertinent for carrying out the provisions of this Convention and of the domestic laws of the Contracting States concerning taxes covered by this Convention insofar as the taxation thereunder is not contrary to this Convention.

\*          \*          \*

If information is requested by a Contracting State in accordance with this Article, the other Contracting State shall obtain the information to which the request relates in the same manner and to the same extent as if its own taxation were involved, notwithstanding the fact that the other State may not, at that time, need such information for purposes of its own tax.

http://www.irs.gov/pub/irs-trty/france.pdf (last visited April 1, 2020).

The Masuda Declaration states that the EOI Request came from "the competent authority for France, acting through its Tax Attaché in Washington, D.C." [Filing No. 11-1 at 2.] Article 3(1)(h) defines "competent authority" as "in France, the Minister in charge of the budget or his authorized representative." http://www.irs.gov/pub/irs-trty/france.pdf (last visited April 1, 2020). According to the Masuda Declaration, against which Mr. Dadon has not presented contradictory evidence, the EOI Request came from the French government, and not SFNI. The Court finds that the summons was properly issued under the Treaty.[3]

b.  <u>The Convention</u>

The United States also argues that the Convention provides separate authorization for issuance of the summons, because it allows the parties to exchange information that is "foreseeably

---

[3] Mr. Dadon argues that the IRS was prohibited from issuing the summons under Article 28 of the Treaty because the tax obligation has not been finally determined. [Filing No. 6 at 2.] Article 28 relates to assistance with the collection of taxes, whereas the summons here is to promote the exchange of information, which is governed by Article 27. Additionally, the Court need not consider whether the summons was properly issued under the 2009 Protocol as well. The Court has relied upon the language of the Treaty prior to the 2009 Protocol, which the United States also relies upon and which is consistent with Mr. Dadon's argument that the 2009 Protocol never took effect. [*See* Filing No. 6 at 4-5; Filing No. 12 at 6-7.]

relevant to" the assessment and collection of taxes, and permits a party who does not have the information to "take all relevant measures" to provide the information requested.  [Filing No. 12 at 7 (citation and quotation omitted).]

Mr. Dadon did not respond to the United States' argument that the Convention authorized issuance of the summons.  [*See* Filing No. 16.]

By failing to address the United States' argument, Mr. Dadon has waived any argument that the Convention did not authorize the United States to issue the summons.  *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).  Even if he hadn't waived any opposition, the language of the Convention supports the issuance of the summons in this case.  Article 4(1) provides that "[t]he Parties shall exchange any information, in particular as provided in this section, that is foreseeably relevant for the administration or enforcement of their domestic laws concerning the taxes covered by this Convention."  http://www.oecd.org/tax/echange-of-tax-information/ENG-Amended-Convention. pdf (last visited April 1, 2020).  Article 5(2) states that "[i]f the information available in the tax files of the requested State is not sufficient to enable it to comply with the request for information, that States shall take all relevant measures to provide the applicant State with the information requested."  http://www.oecd.org/tax/echange-of-tax-information/ENG-Amended-Convention. pdf (last visited April 1, 2020).  While the Court has not located any cases discussing the application of the Convention in this context, the language of Articles 4(1) and 5(2) appears to provide authority separate from the Treaty for the United States to issue the summons in this case, and Mr. Dadon has not presented any legal precedent suggesting otherwise.

c. IRC § 7602

The United States argues that § 7602 of the IRC does not preclude the IRS's use of the summons power in accordance with the Treaty or the Convention. [Filing No. 12 at 8.] Specifically, the United States asserts that § 7602 permits the issuance of a summons under domestic law, while the Treaty and the Convention relate to using the summons power in response to a proper response from the United States' treaty partners, and § 7602 does not conflict with the Treaty or the Convention. [Filing No. 12 at 8-9.]

Mr. Dadon responds that "the authority that [§ 7602] grants to the IRS can be expanded only by a law approved by both the House and the Senate, then signed into law by the President," and the Treaty was not passed by the House. [Filing No. 16 at 3.]

In reply, the United States argues that the Treaty and the Convention are on equal footing with the IRC. [Filing No. 17 at 5-6.]

The Court finds that there is not a conflict between § 7602 of the IRC on the one hand, and the Treaty and the Convention on the other. Section 7602 authorizes the issuance of a summons by the IRS "[f]or the purpose of…determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability…." 26 U.S.C. § 7602(a)(2). It governs the issuance of summonses in the domestic context. The Treaty and the Convention, on the other hand, authorize the issuance of summonses where the request comes from a treaty partner for the collection of taxes by that treaty partner. There is no conflict between the two mechanisms and the IRC does not preclude the issuance of the summons here.

In sum, the Court finds that the summons was issued for a legitimate purpose. It was issued at the request of the government of France, in accordance with the Treaty and the Convention.

### 2. *Relevant to the Investigation*

The United States argues that the information sought by the French government is relevant to the investigation, and notes that the Treaty requires that the information be "foreseeably relevant" and the Convention requires that the information "may be relevant." [Filing No. 12 at 4-5.] Mr. Dadon does not argue in his response that the information sought is irrelevant to the investigation, [*see* Filing No. 16], although he asserts in his Declaration filed with his Petition to Quash that he has never had an ownership interest in or been employed by SFNI, that his bank account is not owned by SFNI, and that no funds have ever been sent from that account to SFNI or deposited in that account by SFNI. [Filing No. 2 at 1-2.]

The Masuda Declaration outlines the relevance of the information requested, as stated in the EOI Request:  SFNI purchased metals from Ultrawave; SFNI paid Ultrawave more than €8.9 million in connection with the transactions; France believes SFNI improperly claimed deductions to its French VAT liabilities based on VAT payments made to Ultrawave that were never collected or remitted to French authorities; and French authorities believe the VAT amounts that should have been remitted were transferred by Ultrawave to the Chase bank account controlled by Mr. Dadon and which is the subject of the summons. [Filing No. 11-1 at 2-3.]  This information – which Mr. Dadon has not contradicted, either in his Declaration or otherwise – is sufficient to show that the information requested may be relevant to the French government's investigation.

### 3. *Not Already in the Possession of the IRS*

The United States, relying upon the Masuda Declaration, argues that the information sought by the summons is not already in the possession of the IRS or the French tax authorities. [Filing No. 12 at 5.]  Mr. Dadon does not argue otherwise in his response.  [Filing No. 16.]

The Masuda Declaration states that "[t]he French tax authorities have indicated that they have exhausted all means available in their count[r]y to obtain the information requested.  The IRS was not in possession of the requested information at the time the summons was issued and is not currently in possession of the requested information."  [Filing No. 11-1 at 4.]  The United States has sufficiently shown that the information sought through the summons is not already in its possession, or in the possession of the French government.

### 4.   *Satisfaction of the Administrative Requirements*

The United States argues that the administrative requirements set forth in the IRC have been satisfied because "[t]he summons was properly served by certified mail pursuant to Sections 7603 and 7609(a)(1) of the [IRC] and the persons identified in the summons, SFNI and Mr. Dadon, were provided notice in accordance with Section 7609(a)(2) of the [IRC]."  [Filing No. 12 at 5.]

Mr. Dadon does not argue in his response that the United States has failed to follow the administrative requirements set forth in the IRC, [*see* Filing No. 16], but does allege in his Amended Petition to Quash that he was not provided notice under § 7602(c)(1), [Filing No. 6 at 8].

Section 7609(a)(1) of the IRC provides that:

If any summons to which this section applies requires the giving of testimony on or relating to the production of any portion of records made or kept on or relating to…any person (other than the person summoned) who is identified in the summons, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined.

26 U.S.C. § 7609(a)(1).

The Masuda Declaration states that notice of the summons was sent to Mr. Dadon and his counsel via certified mail, [Filing No. 11-1 at 3], and the corresponding certified mail receipts and

summonses are attached to the Masuda Declaration, [Filing No. 11-2; Filing No. 11-3].   The documents indicate that notice was served on Mr. Dadon and his counsel on October 8, 2019 – the same day the summons was served on Chase.   [Filing No. 11-2; Filing No. 11-3.]   Additionally, the summons required production of the documents by November 11, 2019, so serving the notice on Mr. Dadon on October 8, 2019 was not later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined.   26 U.S.C. § 7609(a)(1).   These documents are uncontradicted by Mr. Dadon, and indicate that the United States provided proper notice to Mr. Dadon under § 7609.

In sum, the United States has met its burden of showing that the summons was issued for a legitimate purpose, that the information sought by the summons is relevant to the French government's investigation, that the information sought is not already in the possession of the IRS or the French government, and that the United States met the applicable administrative requirements.   Additionally, the Court finds that Mr. Dadon has not presented any evidence showing that the United States has abused the Court's process, issued the summons for purposes of harassment, or otherwise failed to act in good faith.   Accordingly, the Court **GRANTS** the United States' Motion to Dismiss and, in the Alternative, Motion for Summary Judgment, [Filing No. 11], and **DISMISSES WITH PREJUDICE** Mr. Dadon's Amended Petition to Quash IRS Third Party Summons, [Filing No. 6].

**V.**
**CONCLUSION**

Based on the foregoing, the Court **GRANTS** the United States' Motion to Dismiss and, in the Alternative, Motion for Summary Judgment, [11], and **DISMISSES WITH PREJUDICE** Mr. Dadon's Amended Petition to Quash IRS Third Party Summons, [6].   Final judgment shall enter accordingly.

14

Date: 4/1/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record</u>**

15